NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0260n.06
Filed: April 14, 2006

No. 04-4322

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| LEZE GOJCAJ, | ) | |
| | ) | ON PETITION FOR REVIEW |
| Petitioner, | ) | OF A DECISION OF THE |
| | ) | BOARD OF IMMIGRATION |
| v. | ) | APPEALS |
| | ) | |
| ALBERTO GONZALES, ATTORNEY GENERAL, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |
| ———————————————————— | ) | |

BEFORE: BOGGS, Chief Judge, BATCHELDER, Circuit Judge; and KATZ, District Judge.*

**PER CURIAM.** Petitioner Leze Gojcaj is a native and citizen of Yugoslavia (now Serbia-Montenegro). She seeks review of a Board of Immigration Appeals ("BIA") decision that denied her appeal of an Immigration Judge's ("IJ") ruling pretermitting her individual application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT"). The BIA so ruled because Petitioner was already a derivative beneficiary of her mother's application for asylum. For the following reasons, this Court denies the petition for review.

### I. Factual Background

---

*The Honorable David A. Katz, United States District Judge for the Northern District of Ohio, sitting by designation.

In February 1992, at age 12, Petitioner accompanied her mother, Djusta Gojcaj ("Djusta") and brother, Fran Gojcaj ("Fran") to the United States, where they entered without inspection. In March 1997, Djusta applied for asylum and withholding of deportation and listed both Petitioner and Fran as minor children. The Immigration and Naturalization Service ("INS")[1] initiated removal proceedings against Ms. Gojcaj, Djusta, and Fran in October 1997, alleging that they were inadmissible for being present in the United States without having been admitted or paroled, in violation of Section 212(a)(6)(A)(I) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1182(a)(6)(A)(I).

On February 24, 1998, at an initial Master Calendar Hearing, Petitioner's case was consolidated with her mother's case. At the hearing, Petitioner admitted she was not a citizen or national of the United States; admitted she entered the United States near San Ysidro, California, in or about February 1992; and acknowledged she was not admitted or paroled after inspection by an immigration officer. While Petitioner admitted being a native of Yugoslavia, she denied being a citizen thereof. During this proceeding, the Gojcajs admitted that they were subject to removal. Djusta requested relief from removal in the form of asylum, withholding of removal, and protection under the CAT. Petitioner and her brother were listed as derivative beneficiaries in Djusta's application for asylum. Alternatively, the Gojcajs also applied for voluntary departure.

Just prior to the Gojcajs' Master Calendar Hearing, Petitioner, age 17 years, entered a guilty

---

[1] Though the INS has been incorporated into the Department of Homeland Security, the Court will continue to refer to the agency as the INS in this opinion.

plea in Michigan state court to felony insurance fraud, and, as a result, was placed on probation. The insurance fraud conviction provided a basis for deporting Petitioner independent of her 1992 entry without inspection, and, on September 1, 1998, the INS initiated separate removal proceedings against Petitioner individually.[2] Counsel for Djusta and Fran also represented Petitioner in her separate removal case. The hearing in Petitioner's individual case was continued to October 29, 1998, and the hearing on her mother's asylum application was accelerated to October 29, 1998. Subsequently, and by way of a motion to dismiss, the Petitioner contested the characterization of her conviction under immigration law.

On October 29, 1998, the Immigration Judge heard argument on Petitioner's motion but chose to reserve a decision in the matter until conclusion of the hearing. The IJ then went forward with a hearing on Djusta's application for asylum, in which the Petitioner was included as a derivative beneficiary. At the conclusion of the hearing, the IJ issued two oral orders. In one decision, the IJ denied Djusta's application for asylum. For some reason, this decision nominally related only to Djusta and Fran, although Petitioner was also a derivative beneficiary on Djusta's application, and the denial or approval of that application would have applied equally to Petitioner. In the other decision, relating to Petitioner, the IJ ruled that the allegation of removability on the basis of the criminal conviction was sustained. The IJ additionally denied Petitioner's application for voluntary departure and ordered her removed. Finally, the IJ noted that Petitioner had not made

---

[2] The INS alleged that insurance fraud involved moral turpitude, which made Petitioner inadmissible under INA § 212(a)(2)(A)(i)(I), 8 U.S.C. § 1182(a)(2)(A)(i)(I). Petitioner was detained under the mandatory detention provisions of INA § 236(c), 8 U.S.C. § 1226(c).

independent applications for relief but was listed as a derivative beneficiary on her mother's asylum application, which had been denied. The Petitioner appealed to the BIA. Simultaneously, Djusta and Fran also appealed to the BIA the decision denying Djusta's application for asylum.

On appeal, Petitioner argued that she had not been "convicted" for immigration purposes. Her Appeal Brief stated that the issue of Petitioner's eligibility for asylum as a derivative beneficiary of her mother's application was being argued in Djusta and Fran's appeal, and that, "if the Board decides to grant Djusta Gojcaj's application for asylum on appeal then the Respondent, Leze Gojcaj [Petitioner], would also be eligible to have her proceedings terminated based on the asylum grant as she is a derivative beneficiary expressly included in such application." During the pendency of Petitioner's appeal, the state court vacated her conviction for insurance fraud, on the merits.

On July 15, 1999, Petitioner filed a motion with the BIA to vacate the order of removability, as she was no longer convicted of a crime of moral turpitude. At that time, she also requested a remand for consideration of her application for voluntary departure. The motion again asserted that Petitioner was still a derivative beneficiary on her mother's asylum application, and that if the BIA ruled in favor of Djusta in her separate appeal, Petitioner would also be eligible for asylum. The BIA remanded to the IJ to determine the impact of the state court's vacation of Petitioner's conviction "as well as for consideration of other matters deemed appropriate by the Immigration Judge."

On remand, the INS agreed that due to Petitioner's conviction having been vacated by the state court, there was no longer a basis for asserting a ground of inadmissibility. At an October 15,

4

1999, hearing, Petitioner's counsel, for the first time, put forth the theory that Petitioner's asylum case had been separated from her mother's and somehow needed to be "rejoined." Counsel stated:

> Initially this case was joined with her mother and her [brother's] case . . . for political asylum. And then because she was taken into custody, they were divided, set apart, and now the conviction has been set aside on its merits. And the asylum case is now up at the Board of Immigration Appeals, so it's a procedural quandry [sic] here, I'm not sure how we get her case to join back together if that's appropriate, because the testimony, the underlying case is the same as her mother's.

Immigration Judge Walsh's statements in response indicate his belief that if Djusta's appeal was successful, Petitioner would also still be entitled to asylum. He explained that if the BIA granted asylum in Djusta's appeal, and if Petitioner's state conviction was no longer valid, Petitioner "could probably then apply on that other INS form that they have as a beneficiary, but I don't see how we can re-open and have a separate asylum case for her, " to which Petitioner's counsel replied, "I'm really not asking for that." Judge Walsh agreed that since the conviction had been overturned, the only issue remaining was whether the Petitioner was subject to removal for being in the United States without being admitted or paroled. Judge Walsh indicated his inclination to grant Petitioner a voluntary departure but was concerned that he could not determine a specific time period within which he could be confident that the application of Petitioner's mother would be ruled upon. Therefore, Judge Walsh issued a continuance until March 2000. It was noted that Petitioner would turn 21 years of age in April 2000. At the conclusion of the hearing, Judge Walsh told Petitioner, "we're just going to push your case off long enough to see what happens with your parents' [sic] case, so if their case wins, if we can do it in time, then you will too."

The next hearing took place on June 23, 2000, with Immigration Judge Mills, who noted that

5

the Petitioner had turned 21. Applying the law as it existed at the time, Judge Mills concluded that Petitioner had "aged out" and was no longer included in her mother's application. *See* INA §§ 101(b)(1), 208(b)(3), 8 U.S.C. §§ 1101(b)(1), 1158(b)(3) (2000). On that basis, the Petitioner was allowed to file her own, individual application for asylum, and a hearing was scheduled for January 2001 on her individual application.

Following a series of continuations, Petitioner's hearing on her individual application was held on January 21, 2003, this time before Immigration Judge Copeland. At that hearing, in response to a question by the court as to whether there had ever been a full asylum hearing, Petitioner's counsel stated that there had been a full hearing. In addition, Petitioner's counsel noted that Petitioner's mother's case was still on appeal. Judge Copeland indicated that conducting a full hearing on Petitioner's application was futile as it would essentially be a repetition of her mother's hearing:

> I just don't deem it appropriate to have another hearing on the same issue involving a close family member where she could have, and again, this is critical for me, she could have, if there had been some reason, if her factual situation was significantly different from the mother's, say she's been away at boarding school or something and she was raped there and had an entirely different story. I'm sure there the attorney representing her would have filed a separate application for her because she'd have grounds for asylum that the mother and the brother would not be able to claim but the fact that that was not done would suggest they're all in the same general circumstance and why don't we keep them all together, instead of doing this piece meal, based on the charge which was hardly worth raising anyway, it just complicated the issues.

Judge Copeland pretermitted Petitioner's individual asylum application, finding that she already had a pending application – Djusta's – on review before the Board. The Judge explained

that Petitioner was still eligible for asylum as a derivative beneficiary on her mother's application, and would remain so no matter how old she was when the BIA finally ruled on it. In light of the Child Status Protection Act, which had taken effect on August 6, 2002, Judge Copeland was correct. *See* 8 U.S.C. § 1158(b)(3)(B) (2002). The Judge also commented that:

> [W]hat she's seeking with the new [asylum application] is the same relief that she was seeking through the mother in 1998. I just, it seems that there could also be a potential unfairness that you have a family like this and for some reason one's out, maybe for criminal conviction and then because of some legal issue, that family member gets to have her or his asylum application considered by two separate Immigration Judges, maybe she'll get lucky, maybe Judge Copeland will not rule the way Judge Walsh would have . . . .

Judge Copeland granted Petitioner's application for a voluntary departure and set the date for voluntary departure no later than March 24, 2003. Petitioner appealed to the BIA.

Though Petitioner appealed the IJ's decision finding she already had a pending application and pretermitting her individual application for asylum, Petitioner argued in her Notice of Appeal that, under the Child Status Protection Act, she remained eligible for derivative asylum status under her mother's petition, and that the IJ had erred in denying Djusta's application. Indeed, despite her own previous arguments and the previous statements of Immigration Judges to the contrary, Petitioner's principal argument in the Notice was, again, that her appeal must somehow be "rejoined" with that of her mother and brother's, which was still pending before the BIA. Confusingly, Petitioner contended that the IJ erred in pretermitting her *individual* application "thereby denying [Petitioner] her valid claim for asylum, albeit *as a derivative beneficiary* through [Petitioner's] mother, Djusta." (Emphasis added.) Petitioner claimed that until the BIA agreed that

7

her claim should be rejoined with her mother's, she had been denied due process.

On May 6, 2003, the BIA denied Djusta Gojcaj's petition for asylum. Petitioner changed course. On February 24, 2003, Petitioner withdrew her request to have her case "rejoined" with her mother's. Strangely, given that she had appealed the IJ's order pretermitting her individual application, in her brief before this Court, Petitioner admitted that the IJ's decision to pretermit her asylum application was appropriate, and that she *had been* a derivative beneficiary of her mother's application. However, despite that admission, Petitioner claimed that because her mother's application had been rejected, she had no other forum in which to pursue relief from removal, and deserved a full and fair hearing on her separate, individual application.

On October 5, 2004, the BIA denied Petitioner's appeal, noting that she had failed to meet her burden of proof to establish a well-founded fear of persecution and therefore eligibility for asylum or for withholding of removal. The BIA observed:

> The respondent now argues that the procedural process underlying the case has adversely affected her claim as she feels she has been deprived of the opportunity to defend her application for relief from removal. However, as she readily admits, she is a derivative beneficiary of her mother's application for asylum, and further, she has conceded that the "testimony [and], the underlying case is the same as her mother's case" and that "all of the facts are the same facts." Given these circumstances, we find no reason to consider the disposition of her claim, based on the same facts, differently from that of her mother's and brother's.

(Citations omitted; alteration in original.)

Subsequently, Petitioner filed the instant appeal, stating the issue presented as "whether the BIA abused its discretion and erred as a matter of law in refusing to allow Petitioner to file her own asylum application after she was unable to be included in her mother's removal proceedings."

Petitioner claims her due process right to a full and fair hearing was violated.

## **II. Due Process**

The Court reviews *de novo* the allegation that an alien was deprived of due process under the Fifth Amendment. *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005). It must be noted, however, that under INA § 242(b)(4)(D), the Attorney General's "discretionary judgment whether to grant relief under section 208(a) shall be conclusive unless manifestly contrary to law and an abuse of discretion." 8 U.S.C. § 1252(b)(4)(D).

It is undisputed that Fifth Amendment guarantees are accorded to aliens in deportation proceedings, "entitling them to a full and fair hearing." *Huicochea-Gomez v. INS*, 237 F.3d 696, 699 (6th Cir. 2001). In order to have a liberty interest in a benefit, there must be a legitimate claim of entitlement thereto. *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). "To constitute fundamental unfairness, however, a defect in the removal proceedings must have been such as might have led to a denial of justice." *Huicochea-Gomez*, 237 F.3d at 699 (internal quotation marks omitted).

In this instance, the Petitioner continued as a derivative beneficiary under her mother's petition. First, she did not "age out." The Child Status Protection Act, which applies to asylum applications that were pending *on or after* August 6, 2002, *see* Child Status Protection Act, Pub. L. No. 107-208, § 8 (2002); 8 U.S.C. § 1151 (note), amended 8 U.S.C. § 1158(b)(3) to read:

> An unmarried alien who seeks to accompany, or to follow to join, a parent granted asylum under this subsection, and who was under 21 years of age on the date on which such parent applied for asylum under this section, *shall continue to be classified as a child* for purposes of this paragraph and section 209(b)(3), *if the alien*

9

*attained 21 years of age after such application was filed but while it was pending.*

INA § 208(b)(3), 8 U.S.C. § 1158(b)(3) (emphasis added). The Act applies to Petitioner's mother's application, which was pending on August 6, 2002.

Second, as Petitioner insisted through a large portion of her appeals process, the existence of a separate order and appeal addressing her state criminal conviction did not remove her as a derivative beneficiary of her mother's asylum application. If Djusta's appeal had been successful, Petitioner would have been eligible for asylum as a derivative beneficiary.[3]

Moreover, by virtue of her derivative status on her mother's application, Petitioner was given a full hearing on asylum. Her argument that she was denied due process is therefore unavailing. During the hearing before Judge Walsh, Petitioner's counsel conceded that Petitioner's testimony on her separate case would be the same as that in her mother's, and this information was reiterated by the BIA in denying her appeal.

While the Petitioner is correct that she did not receive a full hearing on her separate and subsequent application for asylum, she was accorded full due process as a derivative beneficiary under her mother's application. Petitioner does not contend that she would have presented evidence different from that submitted in her mother's case. In the absence of any additional evidence which distinguishes her individual case from her claim as a derivative beneficiary, this Court cannot find

---

[3]It seems that much of the tortured procedural history in this case has its root in the IJ's nominal application of his original order denying Djusta's application only to Djusta and Fran, and his notation of its denial as affecting Petitioner in the separate order dealing with her criminal conviction. Had the IJ divided his oral orders between issues, rather than among people, this Court quite likely would not be involved in this case today.

that she was denied a full and fair hearing.  Finally, the failure to grant discretionary relief "does not

amount to a deprivation of a liberty interest."  *Huicochea-Gomez*, 237 F.3d at 700.

### III.  Conclusion

For the reasons stated above, this Court DENIES the petition for review.